UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HAMZA ESA MALDONADO,

                Plaintiff,

v.

                                      Case No. 3:20-cv-638-MMH-JRK

BAKER COUNTY SHERIFF'S
OFFICE, et al.,

                Defendants.

_____

## ORDER

### I. Status

Plaintiff Hamza Esa Maldonado, a federal inmate who is incarcerated at the Federal Correctional Institution in Tallahassee, Florida, initiated this action on May 19, 2020, by filing a Complaint with exhibits (Docs. 3-1 through 3-6) in the Eighth Judicial Circuit Court in and for Baker County, Florida.[1] See Doc. 1-2 at 1, Case No. 2020-CA-71, Docket. Defendants removed the case to this Court on June 22, 2020. See Notice of Removal (Doc. 1). In the Complaint (Doc. 3), Maldonado names the following Defendants: (1) Baker

_____

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

County Sheriff's Office; (2) Baker County Detention Center; (3) Captain Evelyn Blue; (4) Jessica Adrien Looby; and (5) Wyatt Martin Rhoden. He asserts that Defendants violated his right of access to the courts and retaliated against him when they unjustly transferred him on or about April 22, 2020, from the Baker County Detention Center to the Nassau County Jail. As relief, Maldonado seeks monetary damages.

This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 5). The Court advised Maldonado that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation and gave him an opportunity to respond. <u>See</u> Orders (Docs. 6, 20). Maldonado filed a response in opposition to the Motion, <u>see</u> Response (Doc. 22), and submitted exhibits, <u>see</u> Notice of Motion of Refiling Exhibits in Compliance with Court Order and Motion Requesting the Court to Take Judicial Notice of Related Cases (Docs. 33-1 through 33-7).[2] Thus, Defendants' Motion is ripe for review.

---

[2] Maldonado included several of these exhibits as part of his Complaint.

## II. Plaintiff's Allegations[3]

In the Complaint, Maldonado presents a mosaic of allegations, mostly related to his April 2020 transfer to the Nassau County Jail and the subpar conditions he experienced while housed there. He attached exhibits to his Complaint: (1) an April 9, 2020 letter to Circuit Court Judge Gloria R. Walker, who was presiding over several of Maldonado's cases, see Doc. 3-2 at 2-6; (2) Maldonado's March 27, 2020 Affidavit, filed in Case No. 3:20-cv-418-BJD-PDB,[4] see Doc. 3-3; (3) Maldonado's March 31, 2020 Affidavit, filed in Baker County Case No. 2020-CA-47, Maldonado's state-court case that defendants removed to federal court (Case No. 3:20-cv-418-BJD-PDB), see Doc. 3-4; (4)

---

[3] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Burban v. City of Neptune Beach, 920 F.3d 1274, 1278 (11th Cir. 2019); Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

[4] In Case No. 3:20-cv-418-BJD-PDB, Maldonado asserts that Defendant Rhoden retaliated against him for filing grievances and other lawsuits and discriminated against Maldonado because he is an African-American Muslim. According to Maldonado, Rhoden denied him use of the telephone in March 2020; denied him extra time in the law library; denied him the ability to ask a shift supervisor for relief; threatened him with physical harm, specifically a restraint chair; and discriminated against him by segregating black and white inmates from going to the law library together.

Maldonado's April 21, 2020 Affidavit, filed in Baker County Case No. 2020-CA-62, Maldonado's state-court case that defendants removed to federal court (3:20-cv-524-BJD-PDB), [5] <u>see</u> Doc. 3-5; (5) Maldonado's March 30, 2020 Affidavit, filed in Baker County Case No. 2020-CA-47, Maldonado's state-court case that defendants removed to federal court (Case No. 3:20-cv-364-BJD-JBT),[6] <u>see</u> Doc. 3-6 at 1-3; and (6) newspaper articles related to COVID-19 cases in Nassau County, <u>see</u> <u>id.</u> at 4-5.

Maldonado asserts that Defendants transferred him from the Baker County Detention Center to the Nassau County Jail on or about April 22, 2020, when "he was in the middle of" filing motions and meeting deadlines in his case and helping other detainees (Jessica D. Gray, James Hill, Devon Weaver, Darryl Gray Smith, and Romeo Langhorne) with their legal work. Complaint at 5. He states that Defendants "designed" the "illegal transfer" in an effort "to block him and his legal helpers" from preparing a "new lawsuit" that Defendants learned about when they illegally accessed his Universal Serial

---

[5] The Court granted Maldonado's motions to remand, and directed the Clerk to remand the case back to the Eighth Judicial Circuit Court. <u>See</u> Case No. 3:20-cv-524-BJD-PDB, Order (Doc. 33), filed July 31, 2020.

[6] In Case No. 3:20-cv-364-BJD-JBT, Maldonado raises various claims related to a November 10, 2019 assault upon him by another inmate while housed at the Baker County Detention Center.

Bus (USB) flash drive. <u>Id.</u> He avers that Defendants transferred him to prevent him from filing more lawsuits against the jail. <u>See</u> <u>id.</u> at 6. According to Maldonado, the retaliatory transfer hindered his ability to litigate because the Nassau County Jail's law library was outdated and did not have a keypad to type pleadings or a USB port to access his legal documents. <u>See</u> <u>id.</u> He also asserts that Defendants transferred him without notice and a hearing, <u>see</u> <u>id.</u> at 7-9, and "placed his life in imminent danger and harm by exposing him to a possible coronavirus infection" at the Nassau County Jail, <u>id.</u> at 6.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam)

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (citation omitted); <u>see</u> <u>also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Id. And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[7] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

---

[7] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## IV. Summary of the Arguments

As an initial matter, Defendants assert that Maldonado is a three-strikes litigant, as defined in the Prison Litigation Reform Act (PLRA), and urge the Court to dismiss the action under 28 U.S.C. 1915(g). See Motion at 3. Next, they state that the Baker County Sheriff's Office and the Baker County Detention Center should be dismissed because they are not legal entities that can be sued. See id. at 3-4. Additionally, Defendants Blue, Looby, and Rhoden maintain that they cannot be held liable in their official capacities. See id. at 4. They also request dismissal of Maldonado's claims against them for his failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure (Rule(s)). See id. at 4-6.

In response, Maldonado maintains that the PLRA's three-strikes provision does not apply to him because Defendants removed the case from state court, and paid the federal-court filing fee. See Response at 7-9. He also asserts that he states plausible federal constitutional claims relating to his illegal transfer and COVID-19 exposure. See id. at 1-6, 10-15. He maintains that the Baker County Sheriff's Office and the Baker County Detention Center are entities that can be sued, see id. at 9, 12, and that Defendants Blue, Looby, and Rhoden can be sued in their official capacities, see id. at 9. He also states

8

that the federal pleading standards enunciated in Rules 8 and 10 did not apply when he filed his Complaint in state court. See id. at 13.

## V. Discussion and Analysis

## A. Three Strikes

In the Motion, Defendants urge the Court to revoke Maldonado's in forma pauperis (IFP) status that the state court granted to him and dismiss the action under § 1915(g) because Maldonado has had three prior qualifying dismissals and does not meet the imminent danger exception to dismissal. See Motion at 3. Citing Hamza Maldonado and James Hill v. Baker County Sheriff's Office, et al., Case No. 3:20-cv-193-HLA-PDB, in which the Court revoked Maldonado's IFP status and dismissed the action under § 1915(g), Defendants suggest that the Court dismiss this case based on the same rationale. See Motion at 3 (citing Case No. 3:20-cv-193-HLA-PDB, Order (Doc. 40) at 11, filed June 26, 2020 (stating "in order to effectuate the intent of Congress, the only reasonable path for this Court to take is to revoke

9

[Maldonado]'s [IFP] status granted to him by the state court and apply § 1915(g) to this prisoner action removed to this Court")).[8]

Maldonado disagrees with Defendants' argument that this case is due to be dismissed under the three-strikes provision. He states that § 1915(g) "only applies to actions filed in federal court by [a] plaintiff seeking to proceed IFP[.]" Response at 8. He contends that § 1915(g) does not apply to him because he initiated this action in state court, and Defendants paid the federal-court filing fee when they removed the case from state court. See id. at 7-9. Alternatively, Maldonado suggests that, even if the Court finds that § 1915(g) is applicable, the imminent-danger exception to the three-strikes bar applies because Defendants "placed [his] life in imminent danger of serious physical injury" when they transferred him to the Nassau County Jail in April 2020. Id. at 7.

The PLRA established what is commonly referred to as the "three-strikes rule" as a mechanism "[t]o help staunch a 'flood of nonmeritorious' prison litigation[.]" Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1723 (2020) (citing Jones v. Bock, 549 U.S. 199, 203 (2007)). The three-strikes provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any

---

[8] Maldonado has appealed the Court's Order dismissing the case. See Case No. 3:20-cv-193-HLA-PDB, Notices of Appeal (Docs. 48, 50, 52).

> facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that
> it is frivolous, malicious, or fails to state a claim upon
> which relief may be granted, unless the prisoner is
> under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The United States Supreme Court focused on § 1915(g)'s

plain text, Congress's intent, and statutory-construction rules when it held

that a dismissal of an action for failure to state a claim counts as a strike

regardless of whether it was dismissed with or without prejudice. See Lomax,

140 S. Ct. at 1724, 1727 (stating "[t]his case begins, and pretty much ends, with

the text" of § 1915(g), which "makes this case an easy call"); see also Carcieri

v. Salazar, 555 U.S. 379, 387 (2009) ("This case requires us to apply settled

principles of statutory construction under which we must first determine

whether the statutory text is plain and unambiguous. . . . If it is, we must apply

the statute according to its terms.") (citations omitted).

In 2017, the United States Court of Appeals for the Tenth Circuit

addressed the applicability of § 1915(g) in a removal case. See Woodson v.

McCollum, 875 F.3d 1304 (10th Cir. 2017). Recognizing the matter as one of

first impression, the Court held that a prisoner-plaintiff whose case was

removed to federal court had no obligation to pay a federal-court filing fee to

avoid a three-strikes dismissal. The Court stated in pertinent part:

11

In this case the defendants paid the federal filing fee, so Woodson did not seek to proceed IFP. Nevertheless, the district court ruled that § 1915(g) required him to pay a filing fee because he has had three prior lawsuits dismissed on the grounds that they were frivolous, malicious, or failed to state a claim, and he did not qualify for the exception for prisoners who are in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). It therefore dismissed his case.

. . . .

We begin by observing that nothing in the statutory language authorizes the district court's dismissal. <u>See Coleman</u>, 135 S. Ct. at 1763 (focusing on "the plain language of the statute" when interpreting § 1915(g)).[9] Section 1915(g) applies to prisoners with three strikes who "<u>bring</u> a civil action ... <u>under</u> <u>this</u> <u>section</u>." § 1915(g) (emphasis added). We doubt a prisoner could "bring" an action by filing a case in state court only to have it removed to federal court. <u>See Harris v. Mangum</u>, 863 F.3d 1133, 1141 (9th Cir. 2017) ("When a defendant removes a case from state to federal court, it cannot be said that a prisoner-plaintiff was the one who brought the case in federal court."). But regardless, a prisoner certainly does not bring an action "under this section" when he does not seek to proceed IFP under § 1915.

. . . .

The three-strikes rule is to deter prisoners from filing meritless lawsuits in federal court. <u>See Skinner</u>, 562 U.S. at 535, 131 S.Ct. 1289.[10] It was not offended by Woodson's pursuing a claim IFP in the Oklahoma

---

[9] <u>Coleman v. Tollefson</u>, 575 U.S. 532 (2015).

[10] <u>Skinner v. Switzer</u>, 562 U.S. 521 (2011).

> courts. That state is free to set less stringent
> constraints on prisoner litigation. <u>See</u> <u>Abdul-Akbar v.</u>
> <u>McKelvie</u>, 239 F.3d 307, 314-15 (3d Cir. 2001)
> (recognizing that prisoners ineligible to proceed IFP
> under § 1915(g) "may seek relief in state court, where
> limitations on filing I.F.P. may not be as strict" and
> stating that "[p]otentially negative consequences in
> federal courts, as distinguished from state courts, are
> precisely the consequences intended by Congress");
> <u>Wilson v. Yaklich</u>, 148 F.3d 596, 605 (6th Cir. 1998)
> (noting that while § 1915(g) barred the plaintiff from
> proceeding IFP in federal court, he could still "litigate
> his federal constitutional causes of action <u>in</u> <u>forma</u>
> <u>pauperis</u> in state court"). And it was not Woodson who
> sought the federal forum. He did not choose to burden
> the federal courts; the defendants did.

<u>Woodson</u>, 875 F.3d at 1306-07 (footnotes omitted).

In December 2020, the United States Court of Appeals for the Seventh
Circuit provided some guidance when it held that actions initiated in state
court and removed from state court by defendants cannot count as strikes
under § 1915(g). <u>See</u> <u>Hill v. Madison Cnty., Ill.</u>, 983 F.3d 904, 907-08 (7th Cir.
2020) (agreeing with the Third, Ninth, and Tenth Circuits) (citing <u>Dooley v.</u>
<u>Wetzel</u>, 957 F.3d 366, 377 n.9 (3d Cir. 2020); <u>Harris v. Mangum</u>, 863 F.3d 1133,
1140 (9th Cir. 2017); <u>Woodson</u>, 875 F.3d at 1307). The Seventh Circuit stated
in pertinent part:

> Section 1915(g) requires prepayment of the docket fees
> only if the plaintiff has thrice "brought an action or
> appeal in a court of the United States" only to have the
> suit or appeal decided on one of the listed grounds. Hill

13

did not "bring" this suit in a court of the United States. He filed it in state court. Defendants brought it to federal court under § 1441(a), **but § 1915(g) does not apply to complaints brought to federal courts by defendants.**

Hill, 983 F.3d at 907 (emphasis added).

The Eleventh Circuit has not yet decided whether § 1915(g) applies when a plaintiff initiates an action in state court, and defendants remove the action to federal court. Nevertheless, the Court provided some thoughtful guidance when it addressed the propriety of remanding an action to state court. See Lloyd v. Benton, 686 F.3d 1225 (11th Cir. 2012). Lloyd, a three-strikes litigant like Maldonado, initiated a civil rights action in state court, and the defendants removed it to federal court. See id. at 1226. The district court determined that "allowing Lloyd to proceed in federal court would contravene" the PLRA, and therefore remanded Lloyd's case to state court. Id. at 1226-27. The Eleventh Circuit vacated the district court's remand order because the district court had federal-question jurisdiction of the removed claims despite the fact that Lloyd qualified as a three-strikes litigant. See id. at 1227-28 (citing with approval Lisenby v. Lear, 674 F.3d 259, 262 (4th Cir. 2012) (holding that remand of a "three strikes" prisoner's civil action to state court was improper because the district court had subject matter jurisdiction of the removed claims, and the district court lacked legal authority under the PLRA to deprive the defendants

14

of a federal forum)). The Court declined to decide whether the district court should dismiss the action because of Lloyd's three-strikes status, but warned that district courts may not take actions that "seem justifiable to them but which are not recognized by the controlling statute." Id. at 1228 (internal quotations and citation omitted).[11] Although the Eleventh Circuit addressed different statutory provisions in Lloyd, the rationale underlying its decision is persuasive as to the issue at bar.

At the district-court level, some courts have found that three-strikes litigants who initiate their actions in state court should not be permitted to circumvent the PLRA's bar to proceeding in forma pauperis when defendants remove their cases to federal court. See Toney v. Courtney, No. 3:16cv418-LC-CJK, 2017 WL 4229068, at *6 (N.D. Fla. Aug. 30, 2017), report and recommendation adopted, No. 3:16cv418-LC-CJK, 2017 WL 4226508 (N.D. Fla. Sept. 22, 2017) (revoking the state court's grant of leave to proceed as a pauper because the plaintiff was a three-strikes litigant); Harris v. Fla. Dep't of Corr., No. 4:14cv575-RH/GRJ, 2015 WL 1729474, at *5 (N.D. Fla. Apr. 14, 2015) (concluding "there are compelling reasons for applying the three strikes bar to

---

[11] On remand from the Eleventh Circuit, the district court dismissed the case on other grounds, not reaching the issue whether the three-strikes bar should apply. See Case No. 3:10-cv-559-J-32JRK, Order (Doc. 51) (dismissing the case for Lloyd's abuse of the judicial process).

prisoner actions removed from state court to federal court"); <u>Riggins v. Corizon Med. Servs.</u>, No. 12-0578-WS-M, 2012 WL 5471248, at *2 (S.D. Ala. Oct. 19, 2012), <u>report and recommendation adopted</u>, No. 12-0578-WS-M, 2012 WL 5470892 (S.D. Ala. Nov. 9, 2012) ("Whereas, not to apply the 'three-strikes' rule to [the] removed state court action would allow Plaintiff to accomplish an end-run around the 'three-strikes' rule by filing in state court and hoping, perhaps, for removal of his action to [the district court]."); <u>Bartelli v. Beard</u>, No. 3:CV-08-1143, 2008 WL 4363645, at *5-6 (M.D. Pa. Sept. 24, 2008).

On the other hand, another jurist of this Court recently concluded that the three-strikes provision does not bar Maldonado from proceeding in federal court when he initiated the action IFP in state court and the defendants removed the action to this Court. <u>See</u> <u>Samuel Maldonado and Marisol Maldonado v. Evelyn Blue, et al.</u>, No. 3:20-cv-364-BJD-JBT (M.D. Fla. Mar. 2, 2021) (denying defendants' request to dismiss the case based on Samuel Maldonado's status as a three-strikes litigant); <u>Hamza Maldonado v. Baker Cnty. Sheriff's Office, et al.</u>, No. 3:20-cv-418-BJD-PDB, 2021 WL 118979, at *5 (M.D. Fla. Jan. 13, 2021) ("If Congress intended the three-strikes bar to apply in actions commenced in state court and removed to federal court, such a limitation would have been written into the statutory framework. It was not.") (footnote omitted). Other district courts agree. <u>See</u> <u>Crisano v. Grimes</u>, No.

16

1:19cv1612 (CMH/TCB), 2021 WL 120943, at *6 (E.D. Va. Jan. 12, 2021) ("This case did not fall under the three-strikes rule because [plaintiff] did not file it in federal court.") (citations omitted); Abreu v. Kooi, No. 9:14-CV-1529 (GLS/DJS), 2016 WL 4702274, at *4 (N.D.N.Y. Aug. 4, 2016), report and recommendation adopted, No. 9:14-CV-1529 (GLS/DJS), 2016 WL 4690404 (N.D.N.Y. Sept. 7, 2016) (reasoning that a three-strikes litigant who initiates an action in state court is not "circumventing" the PLRA, even if removal is foreseeable, "because the PLRA does not address prisoner filings in state court"); Johnson v. Rock, No. 9:14-CV-815 (DNH/ATB), 2014 WL 7410227, at *6 (N.D.N.Y. Dec. 31, 2014) ("These cases [applying the three-strikes bar] ignore the fact that the plaintiff did not choose to bring the action in federal court, and the defendants paid the filing fee."); Bailey v. Suey, No. 2:12-CV-01954-JCM, 2014 WL 3897948, at *3 (D. Nev. Aug. 11, 2014); Howard v. Braddy, No. 5:12-CV-404 (MTT), 2013 WL 5461680, at *4 (M.D. Ga. Sept. 30, 2013).

Indeed, Courts agree that the purpose of the three-strikes rule is to deter prisoners from filing meritless lawsuits in federal court. See Lomax, 140 S. Ct. at 1723, 1726 ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits."); Skinner v. Switzer, 562 U.S. 521, 535 (2011); Jones v. Bock, 549 U.S. at 203; Woodson, 875 F.3d at 1307. In

the instant case, Maldonado did not "bring" this action in federal court. Instead, he chose to initiate the action in state court, a judicial forum where the filing limitations may not be as strict as they are under the PLRA. See Gay v. Chandra, 682 F.3d 590, 596 (7th Cir. 2012) ("The PLRA's three-strikes obstacle does not apply in state courts, where [plaintiff] filed this suit."); Abdul-Akbar v. McKelvie, 239 F.3d 307, 314-15 (3d Cir. 2001) (noting three-strikes litigants "may seek relief in state court, where limitations" on proceeding IFP "may not be as strict" as they are under the PLRA); Wilson v. Yaklich, 148 F.3d 596, 605 (6th Cir. 1998) ("The plaintiff, despite being barred from bringing his present § 1983 claims in federal court as an indigent, still had available to him at the time of the initial filing the opportunity to litigate his federal constitutional causes of action [IFP] in state court.") (citation omitted). Here, Defendants chose to remove the action to this Court, which is their right under the removal statute. See 28 U.S.C. § 1441(a).[12]

After careful consideration, the Court finds that the PLRA's three-strikes bar is not applicable to the particular circumstances presented here. This case does not fall within the ambit of the three-strikes rule because

---

[12] Section 1441(a) authorizes a defendant to seek removal of a lawsuit originally brought in state court when the federal court has jurisdiction over the cause of action.

Maldonado did not initiate the action in federal court. <u>See</u> <u>Lisenby</u>, 674 F.3d at 262-63; <u>accord</u> <u>Lloyd</u>, 686 F.3d at 1227. As such, Defendants' Motion seeking dismissal on the basis of their assertion that the Court should revoke Maldonado's IFP status and dismiss the action under § 1915(g) is due to be denied.

### B. Defendants Baker County Sheriff's Office and Baker County Detention Center

Next, the Court turns to Defendants' assertion that the Baker County Sheriff's Office and the Baker County Detention Center are not legal entities that can be sued. <u>See</u> Motion at 3-4. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "a person" acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. When a plaintiff seeks to sue an entity, as opposed to an individual person, the law of the state in which the district court sits determines whether the entity has the capacity to be sued under § 1983. <u>See</u> <u>Dean v. Barber</u>, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (stating that certain subdivisions of local or county governments, such as sheriff's departments and police departments, generally are not legal entities subject to suit). In Florida, a sheriff's office or jail is not a legal entity subject to suit under § 1983. <u>See</u> <u>Faulkner v. Monroe Cnty. Sheriff's Dep't</u>, 523 F. App'x 696, 701 (11th Cir. 2013) (affirming dismissal of the Monroe

19

County Sheriff's Office); <u>see</u> <u>also</u> <u>Herrera v. Rambosk</u>, No. 2:17-cv-472-JES-MRM, 2019 WL 1254772, at *4 (M.D. Fla. Mar. 19, 2019) (dismissing the Collier County Jail under § 1915(e)(2)(B)(ii)); <u>Monroe v. Charlotte Cnty. Jail</u>, No. 2:15-cv-729-JES-MRM, 2015 WL 7777521, at *2 (M.D. Fla. Dec. 3, 2015) ("A correctional facility or [a] jail is not a proper defendant in a case brought under 42 U.S.C. § 1983.").

Neither the Baker County Sheriff's Office nor the Baker County Detention Center is an entity subject to suit under Florida law. The Court also observes that Maldonado does not include any facts suggesting how these entities violated his federal constitutional rights. As such, all claims against the Baker County Sheriff's Office and the Baker County Detention Center are due to be dismissed.

### C. Official Capacity Liability

Maldonado sues Defendants Blue, Looby, and Rhoden in their individual and official capacities. <u>See</u> Complaint at 4. Defendants assert that Maldonado cannot hold them liable in their official capacities. <u>See</u> Motion at 4 (citing <u>Brown v. Neumann</u>, 188 F.3d 1289, 1290 (11th Cir. 1999)). Maldonado maintains that "Defendants' interpretation is misplaced" because the United States Constitution and "the law says" that he can sue Defendants in their official capacities. Response at 9.

When a plaintiff sues a governmental actor in his or her official capacity, the action is one against the entity the actor represents. Brown, 188 F.3d at 1290; Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). A government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno v. School Bd. of Volusia Cnty., Fla, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016)

21

(stating <u>Monell</u> "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [<u>government entity</u>] from acts of <u>employees</u> of the [government entity], and thereby make clear that [governmental] liability is limited to action <u>for which the [government entity] is actually responsible</u>.'" <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (quotations and citations omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (quoting <u>Pembaur</u>, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. <u>See</u>

22

Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Defendants' official capacity liability under § 1983 is the functional equivalent of a suit against Baker County, Maldonado must show that an official policy or a custom or practice of the county was the moving force behind the alleged federal constitutional violation.

Upon review, Maldonado has neither identified an official county policy of deliberate indifference nor an unofficial county custom or practice that was "the moving force" behind any alleged constitutional violation. Maldonado's factual allegations are simply insufficient to sustain a claim that there is either a policy, practice, or custom of denying inmates their constitutional rights. In consideration of the above analysis, the Court finds that Maldonado has failed

to establish a claim that Defendants Blue, Looby, and Rhoden are liable in their official capacities. Therefore, the Motion is due to be granted as to Maldonado's official-capacity claims against Defendants Blue, Looby, and Rhoden.

### D. Federal Rules of Civil Procedure 8 and 10

The Court next turns to Defendants' assertion that the Court should dismiss Maldonado's claims against them because he failed to comply with Federal Rules of Civil Procedure 8 and 10. See Motion at 4-6. They urge the Court to dismiss the Complaint because it "is precisely the type of pleading the Federal Rules of Civil Procedure are designed to prevent." Id. at 5. They state that "[t]here simply is not enough cogent factual and legal argument in [Maldonado]'s complaint for Defendants to determine what claims have been brought against what Defendants, or if one or more additional defenses might be available." Id. at 6. In response, Maldonado contends that the federal pleading standards in Rules 8 and 10 did not apply when he filed his Complaint in state court. See Response at 13.

The Federal Rules of Civil Procedure apply to matters of procedure only after a case enters federal court. See Fed.R.Civ.P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); see Lang v. U.S. Soc. Sec. Admin., 612 F.3d 960, 866 (8th Cir. 2010) ("It is axiomatic that state rules

24

of civil procedure apply to state court actions, and the federal rules of civil procedure do not."). Thus, the Court finds that Maldonado was not required to comply with the federal pleading requirements of Rules 8 and 10 when he filed his Complaint in state court. As such, Defendants' Motion on this issue is due to be denied.

Nevertheless, given the rambling nature of Maldonado's assertions and his failure to provide facts sufficient to show how each Defendant violated his federal constitutional rights, the Court will give Maldonado an opportunity to amend. A more carefully-drafted amended complaint will narrow the issues and alert Defendants as to how each of them allegedly violated Maldonado's federal constitutional rights. In amending, Maldonado must comply with Federal Rules of Civil Procedure 8 and 10. The Eleventh Circuit recently explained the requirements of Rules 8 and 10, stating in pertinent part:

> Federal Rule of Civil Procedure 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also requires that "each claim founded on a separate transaction or occurrence ... be stated in a separate count...." Id. These rules operate for the benefit of the litigants as well as the court. Complaints that comply with these rules allow the defendant to "discern what

25

[the plaintiff] is claiming and frame a responsive pleading." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). Compliant pleadings also allow the court to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. Id. (quoting T.D.S., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

We have called pleadings that fail to comply with Rules 8(a)(2) and 10(b) "shotgun pleadings." Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." Id. (alterations adopted) (quoting T.D.S., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

The essence of a shotgun pleading is "that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. District Bd. of Trustees of Cent. Florida Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). In an effort to categorize the precise defects that produce this fundamental problem, we have identified four rough types of shotgun pleadings. First: complaints that contain "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland, 792 F.3d at 1321. Second: complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. Third: complaints that do not separate "each cause of action or claim for relief" into

26

separate counts. <u>Id.</u> at 1323. Fourth: complaints that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." <u>Id.</u>

<u>Vujin v. Galbut</u>, No. 19-13465, 2020 WL 7090206, at *4 (11th Cir. Dec. 4, 2020). It appears that the gravamen of his Complaint is the April 22, 2020 retaliatory transfer to the Nassau County Jail where he experienced subpar conditions (inadequate law library, inability to access his USB drive, and COVID-19 exposure). Thus, in amending, Maldonado must not confuse the issues in the instant case with those in his other cases.

### E. Maldonado's Requests in his Notice (Doc. 33)

In his Notice, Maldonado asks that the Court take judicial notice of Case Nos. 3:20-cv-193-HLA-PDB and 3:20-cv-524-BJD-PDB and appoint a lawyer to assist him in this case. <u>See</u> Notice at 1. Preliminarily, the Court notes that a request for affirmative relief is not properly made when simply included in a response to a motion. <u>See</u> Fed. R. Civ. P. 7(b); <u>see also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue

27

has not been raised properly.") (quoting <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1222 (11th Cir. 1999)).

Moreover, even if it were proper to include such requests in the Notice, the requests are otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s)). Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. <u>See</u> Local Rule 3.01(a). Local Rule 3.01(g) requires certification that the moving party has conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. <u>See</u> Local Rule 3.01(g). Thus, the Court will not entertain Maldonado's requests for relief included in the Notice. Maldonado is advised that, if he wishes to pursue such relief, he is required to file an appropriate motion, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. Additionally, Maldonado may submit exhibits at the summary-judgment stage, if appropriate.

In consideration of the foregoing, it is now

**ORDERED**:

1.    Defendants' Motion to Dismiss (Doc. 5) is **GRANTED** as to Maldonado's (1) claims against the Baker County Sheriff's Office and the Baker

County Detention Center, and (2) official-capacity claims against Defendants Blue, Looby, and Rhoden. All remaining portions of the Motion are **DENIED**.

2.     Plaintiff shall file an Amended Complaint on the enclosed civil rights complaint form **no later than April 23, 2021.**

3.     The Clerk shall provide a civil rights complaint form to Maldonado.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

sc 3/30
c:
Hamza Esa Maldonado
Counsel of Record

29